

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/23/2010

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-34633** |
| **DEAN C. GARRETT, CAROLINE M.** | § | **Chapter 7** |
| **GARRETT,** | § | |
| Debtor(s). | § | **Judge Isgur** |

## AMENDED MEMORANDUM OPINION[1]

For the reasons set forth below, the Court holds that (i) the Texas Debtors are eligible for North Carolina's exemptions pursuant to § 522(b)(3)(A) and (ii) the Debtors are ineligible to exempt any property under § 522(b)(3)(B) and either North Carolina or Texas law. Accordingly, pursuant to § 522(b)(3)(A), the Debtors may exempt $70,000.00 of value from their Texas real property, and balance of their claimed exemptions are allowed.

### Background

Dean C. Garrett and Caroline M. Garrett (the "Debtors") lived in North Carolina from December 2006 until February 2008. In March 2008, the Debtors moved to Texas and subsequently filed a joint chapter 7 petition on July 2, 2009. In the Debtors' Amended Schedule C, the Debtors claimed that certain real and personal property—currently located in Texas—was exempted from the bankruptcy estate under North Carolina's exemption laws, which were made applicable to Debtors' case by 11 U.S.C. § 522(b)(3)(A). Furthermore, the Debtors claimed that since North Carolina's exemptions applied, the Debtors were permitted to claim $268,618.00 of their Texas residence as exempt through the application of 11 U.S.C. § 522(b)(3)(B) and North Carolina's recognition of joint tenancies by the entireties. In the alternative, the Debtors argued

---

[1] The Court, sua sponte, issues this amended memorandum opinion which supersedes the previous memorandum opinion issued on March 31, 2010. The Court's ultimate conclusions in this case and the order issued on March 31, 2010 (Doc. No. 39) are unchanged by this amended opinion.

that if North Carolina's tenancy by the entireties law is inapplicable, $268,618.00 from their residence is exempt under Texas's entireties law and § 522(b)(3)(B).

The chapter 7 trustee objects to the Debtors' use[2] of N.C.G.S. § 1C-1601, the North Carolina exemption statute.  The trustee relies on language in N.C.G.S. § 1C-1601(a) providing that the exemptions contained therein are available to "residents" of the state of North Carolina. Since the Debtors are currently Texas residents, the trustee argues that the residency language in N.C.G.S. § 1C-1601(a) renders the Debtors ineligible to claim the North Carolina exemptions. The trustee also objects to the Debtors' ability to claim $268,618.00 from their Texas residence as exempt through the application of § 522(b)(3)(B) and either North Carolina or Texas's tenancy by the entireties law.  Instead, the trustee argues that Debtors are only eligible to claim the federal exemptions specified in 11 U.S.C. § 522(d).

### Issues Presented

1.      Whether, under 11 U.S.C. § 522(b)(3)(A) and N.C.G.S. § 1C-1601(a), the Debtors are eligible to claim North Carolina's statutory exemptions?

2.      If North Carolina's exemptions are applicable under § 522(b)(3)(A), are the Debtors also permitted to apply North Carolina law for the purpose of 11 U.S.C. § 522(b)(3)(B)?

3.      If the North Carolina exemptions do not apply for the purpose of § 522(b)(3)(B), whether the Debtors may exempt any property under Texas law pursuant to § 522(b)(3)(B)?

---

[2] The trustee has not objected to the specific amounts claimed by the Debtors as exempt under N.C.G.S. § 1C-1601 but solely to the Debtors eligibility to claim any amounts under North Carolina law.

## Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## Discussion

### 1.  Section 522(b)(3)(A) & North Carolina law

The first question the Court must address is whether the Debtors are entitled to claim the North Carolina exemptions[3] found in N.C.G.S. § 1C-1601(a)?  The Debtors argue that they are eligible for North Carolina's exemptions pursuant to 11 U.S.C. § 522(b)(3)(A).  Section 522(b)(3)(A) provides that debtors may exempt:

> [S]ubject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place . . . .

11 U.S.C. § 522(b)(3)(A).  Accordingly, under § 522(b)(3)(A), the "test for determining which state's exemption laws apply depends on whether the debtor has lived in the state where the bankruptcy petition is filed for at least 730 days preceding the filing." *In re Stephens*, 402 B.R. 1, 4 (10th Cir. B.A.P. 2009).  "If so, debtor's exemptions are evaluated under either the federal exemption laws or the exemption laws of the filing state, depending upon whether that state is an

---

[3] A debtor's estate is created on the date a case is commenced under the Bankruptcy Code. 11 U.S.C. § 541(a).  The estate consists of all assets of the debtor, including those in which debtor has claimed an exemption. *In re Brooks*, 393 B.R. 80, 84 (Bankr. M.D. Pa. 2008).  "'[A]ll property of the debtor becomes part of the estate available to satisfy the creditors' claims. The debtor then may remove some of the property by claiming exemptions under 11 U.S.C. § 522(b). Anything properly exempted passes through bankruptcy; the rest goes to the creditors.'" *Id.* (quoting *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985)).

'opt-out' state."[4] *Id.*  However, if the debtor has been domiciled in more than one state during the 730 days immediately preceding the bankruptcy filing, "the court is required to *look back* to the 180-day period immediately preceding the 730-day period." *Id.* (emphasis added).  The debtor's domicile for exemption purposes is the state where the "debtor lived the longest during that 180-day 'look back' period." *Id.*

The parties agree that the Debtors were domiciled in North Carolina and Texas during the 730 days immediately preceding the Debtors' bankruptcy petition.  The parties also agree that the Debtors lived in North Carolina throughout the entire 180 day look-back period.  Thus, the Debtors choice of North Carolina exemptions fits squarely within § 522(b)(3)(A)'s requirements.

However, despite the Debtors' compliance with the facial requirements of § 522(b)(3)(A), the trustee argues that North Carolina law prohibits the Debtors from claiming the North Carolina exemptions.  The trustee relies on the first sentence of N.C.G.S. § 1C-1601(a), which provides, "[e]ach individual, *resident* of this State, who is a debtor is entitled to retain [certain real and personal property as set forth in §§ 1C-1601(a)(1)-(12)] free from the enforcement of claims of creditors . . ." N.C.G.S. § 1C-1601(a) (emphasis added).  The trustee argues that § 1C-1601(a)'s use of the term "resident" restricts the availability of the North Carolina exemptions to North Carolina residents.  According to the trustee, since the Debtors are no longer North Carolina residents, the Debtors are unable to take advantage of § 1C-1601(a)'s protections.

The trustee further claims that because § 522(b)(3)(A) renders the Debtors ineligible for Texas's exemptions and § 1C-1601(a) bars the Debtors' use of North Carolina's exemptions, the

---

[4] "Debtors generally have a choice between electing the federal exemptions and those allowed under state law, unless applicable state law forbids it.  This is commonly referred to as the 'opt-out' provision, and it allows [a state] to require its debtors to only use exemptions available under state and nonbankruptcy federal law if those exemptions are available to the debtor." *Stephens*, 402 B.R. at 3 (citing 11 U.S.C. § 522(b)(2)).

only exemptions that are available to the Debtors are the federal exemptions.  The trustee relies on the "concluding paragraph" of § 522(b)(3), which provides "[i]f the effect of the domiciliary requirement under [§ 522(b)(3)(A)] is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under [§ 522(d)]." 11 U.S.C. § 522(b)(3). The trustee argues that the concluding paragraph was enacted to protect individuals whose exemption options under § 522(b)(3)(A) are nullified by state residency and domiciliary requirements.

### a.  Split Case-law

The specific question the Court must address is whether § 522(b)(3)(A) overrides or, instead, is limited by § 1C-1601(a)'s residency language.  The question is directly related to a broader question that has been considered by numerous courts since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[5] ("BAPCPA"): Under what circumstances do state exemption laws have extraterritorial effect?[6]

---

[5] Courts also faced a similar question before the enactment of BAPCPA.  Under § 522(b)(3)(A)'s predecessor, then § 522(b)(2)(A), "debtors were required to apply the exemption laws from the state that was their domicile for the 180 days immediately preceding the date of the filing of the petition or the state where they were domiciled for the greater portion of that 180-day period." *Stephens*, 402 B.R. at 3.  Thus, there were times when courts were permitted by bankruptcy law to apply the exemptions of a debtor's previous state of domicile but were potentially restricted from doing so by that previous state's residency requirements. *See Bankruptcy Exemption Manual* § 4:6 (2009) (discussing the extraterritorial effect of state homestead exemptions pre and post-BAPCPA).  The courts were split pre-BAPCPA over whether bankruptcy courts could apply a prior state's exemption laws in that situation. *See In re Drenttel*, 403 F.3d 611, 613 (8th Cir. 2005).

[6] Some cases have distinguished state laws depending upon whether the state exemption statute (i) is silent on the issue of, or (ii) explicitly limits, the statute's extraterritorial effect. *See Generally* Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions*, 22 Emory Bankr. Dev. J. 401, 414-16 (2006). *See also Stephens*, 402 B.R. at 6 (holding that the Iowa homestead exemption applies extraterritorially in part because the homestead statute was silent with regard to the statute's extraterritorial reach); *In re Drenttel*, 403 F.3d 611, 613 (8th Cir. 2005) (holding that the debtor, who filed bankruptcy in Arizona, was entitled to claim the Minnesota homestead exemption in part because Minnesota's statute was silent upon its extraterritorial applicability).   Since this case deals with a state law that allegedly limits its application to residents, the Court need not further address cases involving exemption statutes that are silent upon their extraterritorial reach.  However, as set forth below, the Court disagrees with the distinction that these courts have crafted between silent and explicit state exemption statutes: The Bankruptcy Code preempts contrary state exemption law under both circumstances. *See also Camp*, 396 B.R. at 198-99.

It appears that a majority of courts have concluded that "if a state's exemption law is restricted to debtors residing or domiciled in the state, these limitations also apply when debtors are required to use the law of their former domiciles" under § 522(b)(3)(A). *In re Brooks*, 393 B.R. 80, 85 (Bankr. M.D. Pa. 2008) (citations omitted); *see also In re Camp*, 396 B.R. 194, 201 (Bankr. W.D. Tex. 2008). Like the trustee in this case, these cases rely upon the concluding paragraph of § 522(b)(3). *See Brooks*, 393 B.R. at 85; *see also Stephens*, 402 B.R. at 5. They found that the concluding paragraph was enacted to protect debtors who are (i) rendered ineligible for their current state's exemptions by the 180 day look-back rule, (ii) ineligible for their prior state's exemptions due to state residency restrictions, and (iii) subject to opt-out restrictions from their prior state, which render them ineligible for the federal exemptions under § 522(b)(2). *See Brooks*, 393 B.R. at 85 (citations omitted). Thus, according to the majority of courts, the concluding paragraph essentially creates a "safety net" for such debtors who are unable to claim any exemption by allowing them to nevertheless claim the federal exemptions under § 522(d). *Stephens*, 402 B.R. at 5.

However, at least one court has held that § 522(b)(3)(A) preempts state laws that impose limits on the extraterritorial effect of their exemption statutes. *See Camp*, 396 B.R. at 198-99.[7] In *Camp*, the Court determined that "[r]esidency restrictions in a state's exemption laws, including residency restrictions applicable to its opt-out statute, are equivalent to choice of law provisions-they address the question of what state's laws should determine the exemptions of a

---

[7] *Camp* dealt with a debtor who filed bankruptcy in Texas but did not live in Texas during the 730 day period preceding the debtor's bankruptcy filing. *Id*. at 196. The debtor's domicile was located in Florida, which is an opt-out state, during the 180 days preceding the 730 period. *Id.* The parties agreed that, under § 522(b)(3)(A), the debtor could not claim the Texas exemptions. *Id.* However, a dispute arose between the debtor and the trustee concerning whether the debtor was entitled to claim the federal or the Florida exemptions. *Id.* The debtor argued that he was entitled to claim the federal exemptions because Florida's opt-out statute limited its application to residents of Florida. *Id.* at 197. Thus, since the debtor was currently a resident of Texas, Florida's decision to opt-out of the federal exemptions did not apply to him. *Id.* The trustee argued that the Debtor was subject to Florida's exemptions, including its opt-out statute. *Id*. As set forth below, the court agreed with the trustee. *Id.*

debtor who has moved from one state to another." *Id.* at 197 (citing Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions*, 22 EMORY BANKR. DEV. J. 401, 417-18 (2006)) [hereinafter *The Peripatetic Debtor*]. Such state choice of law provisions can come into conflict with the federal choice of law provisions found in § 522(b)(2)[8] and § 522(b)(3)(A). *Id.* at 198. "[B]y adopting § 522(b)(2) and (3)(A), Congress expressed its own judgment that, in instances where a debtor moves from one state to another within 730 days before filing bankruptcy, his exemptions should be determined by the exemption laws (including any opt-out law) of his former domiciliary state." *Id.*

*Camp* then held that state exemption restrictions are preempted[9] by federal law: "[T]his Court finds that the doctrine of preemption requires that this Court not give effect to the residency restriction contained in Florida's opt-out statute, because that restriction conflicts with Congress's intent that the exemption laws of Florida, including its opt-out law, apply to a debtor who has recently moved from that state." *Id.* at 199. Thus, the Court held that state exemption laws can be applied extraterritorially not under state authority; "[r]ather, it is a *federal* choice of law statute- § 522(b)(3)(A)-that has expressly provided that the exemption laws of a particular

---

[8] Under § 522(b)(1), a debtor has the option of using the federal exemptions as provided by § 522(b)(2) or state exemptions as provided by § 522(b)(3), unless the state has opted out of the federal exemptions in accordance with § 522(b)(2). Section 522(b)(2) provides that "[p]roperty listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize." 11 U.S.C. § 522(b)(2).

[9] *Camp* stated that such conflicts between state and federal law are "traditionally resolved by applying the doctrine of preemption. *See e.g., Boggs v. Boggs,* 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) ("In the face of this direct clash between state law and the provisions and objectives of [a federal statutory scheme], the state law cannot stand [because c]onventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (internal quotation marks and citation omitted); *CSX Transp., Inc. v. Easterwood* 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way."); *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 103, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) ("In determining whether state law stands as an obstacle to the full implementation of a federal law, ... it is not enough to say that the ultimate goal of both federal and state law ... is the same, [but rather a] state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal.") (internal quotation marks and citations omitted)." *Id.*

state . . . are applicable to a debtor who, by definition, is no longer a domiciliary of that state . . . ." *Id.* at 202 (emphasis original).

> *Camp* also disagreed with the analysis that has resulted in the majority view:

> [T]hose courts assumed, without discussion, that § 522(b)'s incorporation of each state's substantive exemption laws also incorporated the state law choice of law provisions that each state applies to its exemption laws outside of bankruptcy (e.g., the residency restriction in its opt-out statute). In doing so, those courts have effectively written out of § 522(b)(3)(A) Congress's own considered policy judgment on which state's law should apply when a debtor moves before filing bankruptcy.

*Id.* at 198.

### b.  Independent Analysis

Upon a thorough review of the analytical underpinnings of both the majority and minority views, the Court finds that Congress intended to preempt inconsistent state law when it enacted § 522(b)(3)(A).  As set forth below, although a textual analysis of § 522(b)(3)(A) brings the majority view of courts into doubt, it is inconclusive on the question of preemption.  The Court is nevertheless persuaded in favor of preemption by § 522(b)(3)(A)'s legislative history and underlying policy, as well as related Supreme Court precedent.  Accordingly, the Court holds that the Debtors are eligible to claim the North Carolina exemptions.

### i.  Statutory Interpretation

When interpreting the meaning of a statute, courts must first examine the statutory text. *U.S. v. Mo. Pac. R. Co.*, 278 U.S. 269, 278, 49 S. Ct. 133, 73 L. Ed. 322 (1929) ("[W]here language of statute is clear, and construction according to its terms does not lead to absurd or impracticable consequences, words employed are to be taken as final expression of the meaning intended . . .").  If the meaning of the statute is unambiguous, the Court's inquiry is generally complete. *Rubin v. U.S.*, 449 U.S. 424, 430, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981); *see also*

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) ("[The] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.  Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent."). Furthermore, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Shell Oil*, 519 U.S. at 340; *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989).

### 1.  Section 522(b)(3)(A)

The meaning of § 522(b)(3)(A), construed in isolation, appears clear.  Section 522(b)(3)(A) provides that if a debtor chooses to claim state exemptions, the applicable state law depends upon whether the debtor lived in more than one state during the 730 days immediately preceding the debtor's bankruptcy filing. 11 U.S.C. § 522(b)(3)(A).  If the debtor lived in one state during the 730 day period, that state's exemptions apply. *Id.*  If the debtor lived in more than one state during the 730 day period, courts must look-back to the 180 day period immediately preceding the 730 day period. *Id.*  The debtor may then use the exemptions of the state where the debtor lived the longest during the 180 day look-back period. *Id.*  There is nothing complex or ambiguous about this inquiry.  Section 522(b)(3)(A) provides a simple, mechanical test.

However, there is one major ambiguity within § 522(b)(3)(A): § 522(b)(3)(A) fails to explicitly address whether it preempts state residency and domiciliary restrictions. *See In re Rogers*, 513 F.3d 212, 225-26 (5th Cir. 2008) ("For [statutory] language to be considered ambiguous . . . it must be susceptible to more than one reasonable interpretation or more than one

accepted meaning.").  In setting forth which state's exemptions apply, § 522(b)(3)(A) could be interpreted to preempt state residency and domiciliary restrictions that would otherwise drastically reduce § 522(b)(3)(A)'s effect.[10]   On the other hand, since the Bankruptcy Code regularly relies upon and gives effect to applicable state law[11], it is quite possible that § 522(b)(3)(A) could be construed so that it does not preempt such state restrictions.  Thus, the Court finds that § 522(b)(3)(A), standing alone, is ambiguous on its face with regard to the question of preemption.

### 2.  Section 522(b)(3)(A) & the Concluding Paragraph

The ambiguity within § 522(b)(3)(A) does not necessarily terminate the Court's textual inquiry. *See United Sac. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) ("Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . .").  The Court may consider whether any of § 522(b)(3)(A)'s neighboring provisions shed light on its meaning. *See Id.*

The trustee argues that § 522(b)(3)(A)'s meaning can be derived from its relationship to the concluding paragraph at the bottom of § 522(b)(3).  The concluding paragraph provides that "[i]f the effect of the domiciliary requirement [of § 522(b)(3)(A)] is to render the debtor ineligible for *any* exemption, the debtor may elect to exempt property that is specified under [522(d)]." 11 U.S.C. § 522(b)(3) (emphasis added).   The Court finds that the concluding paragraph, standing alone, is unambiguous.  Clearly, the question § 522(b)(3) posits is whether, given the effect of § 522(b)(3)(A), a debtor is unable to claim *any* exemptions.  Section 522(b)(3)

---

[10] *See Camp*, 396 B.R. at 198.

[11] *See Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) (providing that unless federal statute or Congressional interest dictates otherwise, "[p]roperty interests are created and defined by state law").

provides a "safety net" that allows debtors to claim the federal exemptions when, under § 522(b)(3)(A), no exemptions—federal or state—are available. *See Stephens*, 402 B.R. at 6.

Despite the lack of ambiguity in § 522(b)(3)'s concluding paragraph, the Court finds that the concluding paragraph fails to shed light on the preemption question surrounding § 522(b)(3)(A). *See Shell Oil*, 519 U.S. at 340. As set forth below, when applying the trustee's theory of the relationship between the concluding paragraph and § 522(b)(3)(A) to the undisputed factual and legal parameters in this case, the trustee's theory becomes untenable and § 522(b)(3)(A)'s ambiguity remains.

The parties agree that the Debtors lived in North Carolina during the 180 day look-back period. Therefore, under the plain language of § 522(b)(3)(A), North Carolina's exemptions should apply in this case. However, the trustee argues that North Carolina law cannot apply because of the residency language found in § 1C-1601(a). *Assuming*, for the sake of argument, that the trustee is correct and North Carolina's exemptions are limited to in-state residents, the Court must then consider whether § 522(b)(3)(A) has effectively rendered the Debtors ineligible for *any* exemptions, state or federal.

The Court finds that, even if the North Carolina exemptions are inapplicable, the Debtors remain eligible to claim the federal exemptions, without assistance from § 522(b)(3)'s concluding paragraph. Section 522(b)(1) states that "an individual debtor may exempt from property of the estate the property listed in either [§ 522(b)(2)] or, in the alternative, [§ 522(b)(3)] . . . ." 11 U.S.C. § 522(b)(1). Section 522(b)(2) provides that a debtor may claim the federal exemptions found in § 522(d), unless the debtor's state has opted out of the federal

exemptions.[12]  North Carolina has opted out of the federal exemptions, which upon first glance

supports the trustee's theory that the concluding paragraph is triggered.  For if both the North

Carolina and federal exemptions are unavailable under North Carolina law, then the debtor

would be without any state or federal exemptions, and the concluding paragraph would apply.

However, the weakness of the trustee's argument becomes apparent upon a full reading

of North Carolina's opt-out provision, N.C.G.S. § 1C-1601(f).  Section 1C-1601(f) states that the

"exemptions provided in The Bankruptcy Code, 11 U.S.C. § 522(d), are not applicable to

***residents of this State***." N.C.G.S. § 1C-1601(f) (emphasis added).  This extraterritorial limitation

in the North Carolina opt-out statute delivers a major blow to the trustee's textual argument.  The

Court has already assumed, for the sake of the trustee's argument, that the residency language of

§ 1C-1601(a) limits the application of North Carolina's exemptions to in-state residents.  The

trustee may not have his cake and eat it too.  Absent federal authority to the contrary, the Court

will not give effect to the residency language of § 1C-1601(a) and then ignore the nearly

identical residency language found in § 1C-1601(f).  Thus, under a logical extension of the

trustee's theory, the Court should also limit the opt-out language of § 1C-1601(f) to in-state

residents.

Since the Debtors are not residents of North Carolina, under the Trustee's theory, they

would not be subject to § 1C-1601(f)'s opt-out of the federal exemptions.  Accordingly, the

Debtors would be able to claim the federal exemptions under § 522(b)(2)—which permits

debtors to claim the federal exemptions "unless the State law that is applicable to the debtor[s]

---

[12] Section 522(b)(2) provides, "[p]roperty listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize." 11 U.S.C. § 522(b)(2).

under paragraph (3)(A) *specifically does not so authorize*"—without resort to the concluding

paragraph of § 522(b)(3). *See* 11 U.S.C. § 522(b)(2) (emphasis added).

Therefore, even assuming that the trustee is correct in his claim that § 522(b)(3)(A) does

not preempt state residency and domiciliary requirements, the trustee's argument still fails.  The

trustee argues that the concluding paragraph was enacted to enable individuals in the same

situation as that currently faced by the Debtors to claim the federal exemptions; but the

concluding paragraph simply does not help the Debtors in this case.  For, even when applying the

trustee's theory, the Debtors are still eligible to claim the federal exemptions under § 522(b)(2)

due to North Carolina's restriction of its federal opt-out to in-state residents.   Ironically,

therefore, the trustee's argument, which is intended to give effect to the concluding paragraph,

renders the concluding paragraph meaningless and mere surplusage, at least on the facts of this

case.[13] *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001) ("It

is a cardinal principle of statutory construction [that] a statute ought, upon the whole, to be so

construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or

insignificant.").

### 3.   Impact of Trustee's Theory on the Majority View

The failure of the trustee's argument also brings the basis for the majority view into

doubt.  According to *Brooks*, the majority view holds that the concluding paragraph was enacted

to protect debtors who are (i) rendered ineligible for their current state's exemptions by the 180

---

[13] The Court notes that it reviewed twenty-four opt-out statutes. *See* Norman C. Witte and William L. Healy, II, *Bankruptcy*, 1996 Det. C.L. Mich. St. U. L. Rev. 179, 206 n. 170 (1996) (providing a list of nearly all of the opt-out statutes).  All but seven were substantially similar to the North Carolina opt-out statute in that they were limited to residents or domiciliaries. *See Id.*  Thus, for those seven states that do not explicitly limit their opt-out statute to residents or domiciliaries (and possibly other states whose opt-out statute the Court has not reviewed), the trustee's argument would not render the hanging paragraph superfluous.  Nevertheless, as set forth below, substantial authority supports the Court's decision and the existence of seven broader opt-out statutes does not alter the Court's conclusions.

day look-back rule, (ii) not eligible for their prior state's exemptions due to state residency restrictions, and (iii) subject to opt-out restrictions from their prior state, which render them ineligible for the federal exemptions under § 522(b)(2). *See Brooks*, 393 B.R. at 85. *Brooks* referred to three cases supporting this majority view. *Id.* (citing *In re West*, 352 B.R. 905, 906 (Bankr. M.D. Fla. 2006); *In re Crandall*, 346 B.R. 220, 221 (Bankr. M.D. Fla. 2006); *In re Underwood*, 342 B.R. 358, 361 (Bankr. N.D. Fla 2006)). However, each case cited by *Brooks* is susceptible to criticism for its failure to recognize the impact of extraterritorial restrictions found in state opt-out statutes. In sum, the cases relied upon by *Brooks* are based on the same unpersuasive logic as that proposed by the trustee in this case.

In *West,* the Court held that the debtor, who filed bankruptcy after moving to Florida, was unable to use Florida's exemptions and required to look to Indiana's exemptions by § 522(b)(3)(A).[14] *West*, 352 B.R. at 906. The debtor argued that Indiana's exemptions were also inapplicable in his case because they were limited to debtors domiciled in Indiana on the date of commencement of a case. *Id.* (citing IND. CODE § 34-55-10-2(c)(2005)). The Court agreed with the debtor's theory. *Id.* *West* held that due to the debtor's inability to use either Florida's or Indiana's exemptions, the "final sentence of Bankruptcy Code Section 522(b)(3) thus govern[ed] the Debtor's right to claim exemptions; Section 522(d), the newly established federal exemptions, therefore appl[ied] in . . . Debtor's case." *Id.*

This Court respectfully disagrees with *West's* analysis because *West* failed to consider that Indiana has opted out of the federal exemptions. *See* IND. CODE § 34-55-10-1(2005). In fact, like North Carolina, Indiana has an opt-out provision that only applies to debtors domiciled in Indiana. *Id.* The Indiana opt-out statute provides, "[i]n accordance with Section 522(b) of the

---

[14] The debtor moved to Florida in July 2005 and filed for bankruptcy on April 19, 2006. *West*, 352 B.R. at 905. Before moving to Florida, the debtor resided in Indiana. *Id.* Accordingly, the debtor was required to look to Indiana's exemptions under § 522(b)(3)(A). *Id.*

Bankruptcy Code of 1978 (11 U.S.C. 522(b)), in any bankruptcy proceeding, an individual debtor *domiciled in Indiana* is not entitled to the federal exemptions as provided by Section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d))." *Id.* (emphasis added).  Therefore, given *West's* deference to state domiciliary restrictions, Indiana's opt-out provision did not apply to the out-of-state debtor in *West* and the debtor was free to select the federal exemptions under § 522(b)(2).  Resort to the concluding paragraph—which applies only when the debtor is unable to claim *any* federal or state exemptions—was wholly unnecessary.

Similarly, in *Crandall*, the Court held that § 522(b)(3)'s concluding paragraph applied in the case of a Florida debtor who previously resided in New York before moving to Florida and filing bankruptcy. *Crandall*, 346 B.R. at 221.  The debtor was unable to claim the Florida exemptions because she failed to satisfy § 522(b)(3)(A).[15]  *Id.*  *Crandall* also found that New York's exemptions—which were applicable under § 522(b)(3)(A)—were nevertheless inapplicable in the debtor's case because "New York exemptions are limited to 'individual debtors domiciled in [New York].'" *Id.* (citing N.Y. Debtor and Creditor Law § 282.  Thus, *Crandall* determined that the federal exemptions applied under § 522(b)(3)'s concluding paragraph. *Id.* at 222.

However, as in *West*, *Crandall* failed to consider the residency restriction in New York's opt-out statute. *See* N.Y. Debtor and Creditor Law § 284.  New York's opt-out statute provides that "[i]n accordance with the provisions of [§ 522(b)] debtors *domiciled in this state* are not authorized to exempt from the estate property that is specified under [§ 522(d)]." *Id.* (emphasis added).  Since *Crandall* deferred to New York's domiciliary restrictions, New York's opt-out provision would not have applied to the Florida debtor.  Accordingly, under *Crandall's*

---

[15] The debtor had lived in Florida and New York during the 730 days immediately preceding her bankruptcy filing. *Id.*  The debtor lived in New York throughout the entire 180 day look-back period. *Id.*

reasoning, the debtor should have been eligible for the federal exemptions under § 522(b)(2), and it was unnecessary for the Court to apply the concluding paragraph.

The third case cited by *Brooks*, *Underwood*, follows the same line of reasoning as *West* and *Crandall*. *Underwood*, 342 B.R. at 361.  In *Underwood*, the debtor moved from Colorado to Florida during the 730 days preceding her bankruptcy filing. *Id*. at 360.  The trustee and debtor agreed that Florida law was inapplicable under § 522(b)(3)(A), but disputed whether the debtor was entitled to claim the Colorado or the federal exemptions. *Id.* at 361.  The Court determined that since "the Colorado exemption laws were constitutionally mandated and enacted for the benefit of Colorado residents only, residents of other states are not allowed to avail themselves of the benefit granted by the Colorado legislature to its residents for their protection." *Id.*  The Court then held that concluding paragraph applied because the debtor was unable to claim any exemptions.  *Id.* at 362.

This Court disagrees with *Underwood's* application of the concluding paragraph.  Under Colorado's opt out statute, the "exemptions provided in section 522(d) of the federal bankruptcy code . . . are denied to *residents of this state*." COL. REV. STAT. § 13-54-107 (emphasis added). The opt-out statute does not restrict non-residents from claiming the federal exemptions.  Since the debtor in *Underwood* was a resident of Florida at the time of the bankruptcy filing, the debtor was free to choose the federal exemptions as provided by § 522(b)(2).  And, as in *West* and *Crandall*, resort to the concluding paragraph was unnecessary.

In sum, the Court finds that the trustee's concluding paragraph theory failed to clarify the ambiguity within § 522(b)(3)(A) concerning the question of preemption.  To the contrary, the trustee's theory actually brings the credibility of the majority view into serious doubt.  At the same time, however, the Court also finds that the Debtors' theory of preemption is not

sufficiently supported by the text of § 522(b)(3)(A).    Accordingly, since § 522(b)(3)(A) is ambiguous on the question of preemption, the Court consults legislative history.

### ii.  Legislative History Supports Preemption

"Where doubts as to the meaning of a statute exist, reports of committees of Congress and statements by those in charge of the measure, and other like extraneous matter, may be taken into consideration to aid in ascertaining legislative intent . . ." *Mo. Pac. R. Co.*, 278 U.S. at 278.

The legislative history of BAPCPA is far from extensive.  "The bill was introduced in the Senate Committee on the Judiciary on February 1, 2005, S. 256, 109th Cong. (2005), and ultimately reported favorably to the full Senate several weeks later without a written report." *Osei*, 268 B.R. at 351, n. 9.  BAPCPA became law on April 20, 2005 and the "only written report before enactment comes from the House Committee on the Judiciary from April 8, 2005 . . . ." *Id.*  Although the Committee on the Judiciary's Report was largely silent[16] on § 522(b)(3)(A)'s impact, the dissenting views attached to the Report, while arguing that certain provisions designed to curb bankruptcy exemption abuses were insufficient,  discussed the application and significance of § 522(b)(3)(A):

> The sponsors try to claim that they have closed the [millionaire's] loophole by placing certain restrictions on State homestead exemptions. While true, these restrictions still leave the unlimited homestead exemption largely intact for most wealthy debtors. To the extent that the restrictions may prevent some forms of

---

[16] The only discussion of § 522(b)(3)(A) in the House Committee Reports states:

> *Sec. 307. Domiciliary Requirements for Exemptions.* Section 307 of the Act amends section 522(b)(2)(A) of the Bankruptcy Code to extend the time that a debtor must be domiciled in a state from 180 days to 730 days before he or she may claim that state's exemptions. If the debtor's domicile has not been located in a single state for the 730-day period, then the state where the debtor was domiciled in the 180-day period preceding the 730-day period (or the longer portion of such 180-day period) controls. If the effect of this provision is to render the debtor ineligible for any exemption, the debtor may elect to exempt property of the kind described in the Federal exemption notwithstanding the state has opted out of the Federal exemption allowances.

H.R. Rep. No. 109-31, at p. 72 (2005).

abuse, they will also have unintended consequences that might harm innocent debtors who inadvertently run afoul of the complex new rules attached to exempt property.

The bill does not place an absolute national dollar cap on homestead exemptions. People who, with the exceptions made in the bill as described below, would otherwise be entitled to an unlimited homestead exemption, would still be able to claim the exemption.

The bill does not alter the opt out rule in the Bankruptcy Code, so there is still no federal floor.

**Domiciliary Requirement:** The domiciliary requirement determines which State's exemptions the debtor is allowed to claim.

Sec. 307 of the bill requires a debtor to claim as a domiciliary the place of residence for the greater part of the 730 days preceding the date of the filing of the petition. This applies for claiming any property exemptions, not just the homestead exemption. Current law is 180 days. While it would make pre-bankruptcy planning more difficult for a wealthy debtor seeking a jurisdiction with generous property exemptions, it would also have a substantial impact on a debtor who moves from a jurisdiction with a low exemption to a jurisdiction with a high exemption.

For example, a debtor who lives in New York and retires to Florida would get caught in this net. If the debtor sold her home in New York, moved to Florida, and purchased a home in Florida with the proceeds of the sale, became sick and had to file for bankruptcy (which is a common occurrence) within the 730 period, she would not be able to use the Florida exemption and keep the full value of her home. Instead, she would have to use the New York exemption of $10,000. The rest would be available to pay her creditors. If there is excess value (above the equity and transaction costs) the trustee would have a duty to sell the home to generate funds to pay creditors. The debtor would get a check for $10,000, and lose her home. This would be even less than the federal exemption of $18,450, so she would be harmed even more by the failure of Congress to adopt a federal floor.

H.R. Rep. No. 109-31, at p. 593-94 (2005) (dissenting views of Reps. Conyers, Jr., Nadler, Scott,

Watt, Meeham, Weiner and Van Hollen) (the "Conyers" view).

The Court is aware that the views of legislation's opponents are not generally afforded

treatment equal to that of a bill's supporters. *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19,

30, 109 S. Ct. 278, 102 L. Ed. 2d 186 ("This Court does not usually accord much weight to the

statements of a bill's opponents."). However, at times, courts have looked to objections and dissenting statements in order to determine Congressional intent. See *Booth v. Churner*, 206 F.3d 289, 299 n.9 (3d Cir. 2000) (looking to Congress's awareness of and "failure to heed" the objection of bill's opponents to support its statutory interpretation). *See also* George A. Costello, *Average Voting Members and Other "Benign Fictions": the Reliability of Committee Reports, Floor Debates, and Other Sources of Legislative History*, 1990 Duke L.J. 39, 45 ("'[M]inority' or 'dissenting' views appended to committee reports can be useful to demonstrate general agreement on a particular interpretation, or to establish that there was focused debate on a position advocated by opponents, but rejected by the committee.") (citing Smith v. Robinson, 468 U.S. 992, 1020-21 (1984); California v. United States, 438 U.S. 645, 669-70 (1978)); Harvey R. Boller & Donald J. Peterson, *Job Discrimination Claims Under Collective Bargaining*, 53 Disp. Resol. J. 38 (1998) (stating that "[f]urther proof of congressional intent [was] contained in a statement of 'Dissenting Views' by nine members of the Judiciary Committee" because the dissent agreed with the interpretation of the bill's proponents but argued that the bill should have gone further).

In this case, the Conyers' view is probative of Congressional intent. Conyers argued that Congress should preempt state exemption law by limiting the homestead exemption in bankruptcy cases to a federally allowed amount. In explaining the consequences of the proposed change to § 522, Conyers noted—as a factual statement—that a person moving from New York to Florida would only be able to claim the New York exemptions. This outcome was anathema to Conyers, who argued that only the federal exemption limit should control. As set forth above, the House Committee Report does not dispute Conyers' statement of the impact of the statute on the hypothetical debtor moving from New York to Florida. The Committee and the dissenters

did not dispute the statute's text.  Instead, the dispute was over whether Congress should have made a more substantive change.  Accordingly, the statement is probative because it demonstrates the intent of the legislation.

The Court finds that the Conyers' view provides evidence of Congress's intent to preempt state domiciliary and residency limitations.  In Conyers' example, the debtor moved from New York to Florida within the 730 days immediately preceding the debtor's bankruptcy filing.  These are the same core facts as those found in the *Crandall* decision discussed above. *See Crandall*, 346 B.R. at 221.  However, unlike *Crandall*—which held that the debtor should receive the federal exemptions under § 522(b)(3)'s concluding paragraph—Conyers states that New York law applies in the hypothetical debtor's case. *See Id.* at 222.  Conyers makes no mention of the application of § 522(b)(3)'s concluding paragraph to the debtor's exemption scheme and actually complains that the House Committee failed to provide for the federal exemptions.  This weakens the majority view of courts and lends credence to the minority view that § 522(b)(3)(A) preempts state domiciliary and residency exemption restrictions.

Furthermore, the Conyers' view reflects Congress's awareness of New York's exemption scheme.  Conyers states that the debtor would only be entitled to exempt $10,000.00 from her homestead.  Congress therefore knew that $10,000.00 was the maximum homestead exemption under New York law when it enacted BAPCPA.[17] *See* N.Y. C.P.L.R. § 5206(a).  Conyers also claims that the debtor was ineligible for the federal homestead exemption of $18,500; thus indicating Congress's knowledge that New York had opted out of the federal exemptions.

Given Congress's comprehension of New York's exemption laws, the Court finds it highly significant that Conyers did not mention New York's domiciliary restriction on its

---

[17] The maximum was subsequently increased from $10,000.00 to $50,000.00 on August 30, 2005. *See* 2005 N.Y. Sess. Laws Ch. 623 (S. 4582) (McKinney).

exemptions.  The Court determines that this omission was not accidental.  It indicates Congress

intended for § 522(b)(3)(A) to preempt state residency and domiciliary exemption restrictions.

### iii.   Congressional Intent and the Policy Underlying § 522(b)'s Framework Favor Preemption

This conclusion is consistent with the policy underlying § 522(b)(3)(A) and the overall

balance struck between federal and state law in § 522(b).  Section 522(b)(2), for example,

provides that a debtor may elect the federal exemptions, "unless the State law that is applicable

to the debtor under paragraph (3)(A) specifically does not so authorize." 11 U.S.C. § 522(b)(2).

Section 522(b)(2) therefore demonstrates that Congress intended to honor state opt-out

legislation when it enacted BAPCPA.  For without § 522(b)(2), the hypothetical debtor in

Conyers' example would have had two homestead options.  The hypothetical debtor could have

chosen the $10,000.00 New York exemption or the $18,500.00 federal exemption.  Thus,

moving to Florida would have placed the hypothetical debtor in a superior position[18] compared

to debtors actually domiciled in New York (and subject to New York's exemption scheme) when

they filed for bankruptcy.  But the Conyers' view implicitly indicates that Congress enacted

§ 522(b)(3)(A) in order to put the hypothetical debtor, and those similarly situated, in the

position she would have been in had she not moved to a new state within the 730 days

immediately preceding a bankruptcy filing.[19]  It therefore makes rational sense that Congress

respected state opt-out legislation.  Failing to do so would have thwarted § 522(b)(3)(A)'s

---

[18] Since the federal exemptions are unavailable to New York domiciliaries, the hypothetical debtor would have saved $8,500 by moving to Florida if she were able to claim the federal exemptions.

[19] *See The Peripatetic Debtor*, *supra* at 419-20 ("Congress intended to put the debtor into the same position as the debtor would have been had the debtor not made the recent move.  Congress did not intend to punish the debtor for moving by providing the debtor less favorable exemptions than the debtor would have had by staying put; it merely intended to discourage moves for the purpose of seeking more favorable exemptions prior to a bankruptcy filing.") (citing H.R. Rep. No. 109-31, pt. 1, at 166 (2005)); *see also Drummond v. Urban (In re Urban)*, 375 B.R. 882, 889 (9th Cir. B.A.P. 2007) (stating that § 522(b)(3)(A) was designed "to curb the so-called mansion loophole").

underlying purpose by potentially giving debtors more exemption options than they would have had if they never moved to a new state pre-bankruptcy.

Furthermore, unlike § 522(b)(2), nothing in § 522(b)(3)(A) states that the debtor is entitled to the exemptions from the debtor's previous state of domicile "unless the applicable state law specifically does not so authorize."  Section 522(b)(3)(A) simply states that the debtor is entitled to the same exemptions that existed in the debtor's prior state of domicile if the debtor moved from that prior state[20] in the 730 days immediately preceding the debtor's bankruptcy filing.  This is precisely what occurred in Conyers' discussion of the hypothetical Florida debtor who previously resided in New York.  Without mention of New York's extraterritorial restrictions, Conyers stated that New York's exemptions were applicable pursuant to the Bankruptcy Code.

Conyers disregard for New York's extraterritorial restriction makes sense given the purpose of § 522(b)(3)(A).  If § 522(b)(3)(A) did not preempt state extraterritorial exemption limitations, then the Congressional policy underlying § 522(b)(3)(A) would once again be thwarted by state laws.  In the case of the hypothetical Florida debtor, for example, without preemption, the debtor would be forced to claim the federal exemptions.[21]  Since New York is an opt-state, the debtor would not be placed in the same position the debtor would have been in had she not moved to Florida.  The hypothetical debtor would be in an exemption limbo sought by the Conyers View and rejected by Congress.

---

[20] If the debtor lived in more than one state during the 180 day look-back period, then the exemptions of the state in which the debtor resided the longest during the look-back period are applicable.

[21] Regardless of whether the federal exemptions apply under § 522(b)(2) or § 522(b)(3)'s concluding paragraph. The point here is only that the federal exemptions must apply and that their application is inconsistent with the Congressional policy of placing debtors who move within 730 days of their bankruptcy filing in the same position they would have been in had they never left their prior state of domicile.

Proponents of the majority view would argue that § 522(b)(3)'s concluding paragraph was enacted for this very situation, when debtors are in what this Court describes as an exemption limbo. The Court rejects this notion for two reasons. First, Conyers indicates that this result was rejected and implicates preemption. Second, nothing in the underlying policy of § 522(b)(3)(A) compels this result.

Further, the majority view can produce results that are demonstrably at odds with the Congressional policy behind § 522(b)(3)(A). As stated by *Camp*,

> [I]nterpreting § 522(b)(3)(A) to import state exemption laws wholesale, including limitations based on residency or location of property, can lead to some absurd results. For instance, if a debtor has moved from Idaho within 730 days before filing bankruptcy, § 522(b)(3)(A) clearly says Idaho exemption laws apply. *Battle* would hold that the entirety of those exemption laws applied, including any residency restriction. The exemption statutes of Idaho include a provision that "[r]esidents of this state are entitled to the exemptions provided by this act [and n]onresidents are entitled to the exemptions provided by the law of the jurisdiction of their residence." I.C. § 11-602 (2008). According to the plain language of that choice of law provision, Idaho law does *not* apply. Instead, the law of the state of the debtor's *current* residence applies-a result clearly contrary to Congress's intent in enacting § 522(b)(3)(A).

*Camp*, 396 B.R. at 200.

The Court concludes that § 522(b)(3)(A) preempts state domiciliary and residency exemption restrictions. Accordingly, the Debtors in this case are entitled to claim North Carolina's exemptions.

### iv.  Preemption does not Render the Concluding Paragraph Superfluous

The Court further notes that the concluding paragraph is not rendered superfluous by this Court's holding that § 522(b)(3)(A) preempts inconsistent state residency restrictions. One example where the concluding paragraph would apply is in the case of a debtor who (i) lived in more than one state during the 730 days preceding the debtor's bankruptcy filing, and (ii) was temporarily domiciled overseas during the 180-day period preceding the 730 day period. In that

situation, the debtor would not have been domiciled in any state during the 180-day period and would have been ineligible for any exemptions. In such a case, Congress has determined that the once-overseas debtor could nevertheless claim federal exemptions pursuant to the concluding paragraph.

Another example is a non-citizen who legally immigrated to the United States during the 730 day period. *See Stephens*, 402 B.R. at 6 n. 18. The non-citizen immigrant is eligible to file bankruptcy. *Id.* Such a debtor would be unable to claim the exemptions of his state of domicile due to § 522(b)(3)(A). Similarly, the debtor would be barred from claiming the federal exemptions by the applicable state opt-out statute. In such a case, the immigrant debtor would likely be unable to claim any exemptions without assistance from the concluding paragraph. Thus, the concluding paragraph enables the immigrant debtor to claim the federal exemptions.

Another instance where the concluding paragraph would apply is in the hypothetical situation where a husband and wife file bankruptcy in different states. For instance, assume that the husband and wife live in an opt-out state. Assume that the opt-out state provides a unitary set of exemptions that must be elected jointly by the husband and wife. *See In re Smith*, 254 B.R. 751, 754 (Bankr. W.D. Mo. 2000) (finding that "debtors in Missouri are bound by the express language of the Missouri homestead statute, and that [the] statute allows only one joint owner to claim the entire amount of the homestead exemption."). The couple separates (but the marriage is not dissolved) and the wife moves to another state. The husband then files bankruptcy in the original state (i.e. Nevada, Missouri) and claims exemptions. The wife would not be eligible to claim her own exemptions under applicable state law because the husband would have already claimed her state exemptions. The concluding paragraph would give the separated wife an independent right to claim federal exemptions.

In sum, the Court finds that the concluding paragraph is a provision of last resort that protects debtors who, without the concluding paragraph, could be caught in the cracks of the bankruptcy system and left devoid of exemption rights.  It therefore remains effective and is not rendered superfluous by this Court's interpretation of § 522(b)(3)(A).

### c.   Conclusion

#### i.   Section 522(b)(3)(A) Preempts State Law

Under the Supremacy Clause, state laws that conflict with federal law are without effect. *Altria Group, Inc. v. Good*, --- U.S. ---, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) (citing U.S. CONST. art. VI., cl. 2).  A court's "inquiry into the scope of a statute's pre-emptive effect is guided by the rule that 'the purpose of Congress is the ultimate touchstone' in every pre-emption case.'" *Id.* (citations omitted).  "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Id.*  "Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Id.*

As set forth above, the legislative history and purpose underlying § 522(b)(3)(A) lead to the conclusion that Congress intended to preempt inconsistent state law when it enacted § 522(b)(3)(A).  Essentially, through the application of § 522(b)(3)(A), Congress incorporated state law into the federal bankruptcy framework.  Thus, it is irrelevant whether the North Carolina legislature, or any other state legislature, previously sought to restrict its exemptions to state residents: Federal law, the supreme law of the land, dictates that state exemption statutes will be applied extraterritorially pursuant to § 522(b)(3)(A).  As stated by Professor Bartell:

> The incorporation of state exemptions in § 522(b)(3)(A) should be read as a short-hand way for Congress to avoid restating the exemption laws of the state from which the debtor moved, which it clearly had the power to do. If it had restated those laws in full, it would undoubtedly have excluded any provision that

precluded their applicability to the debtor in question. Its incorporation by reference should be read to intend the same result.

Put another way, by adopting the opt-out provision, Congress enacted a federal exemption scheme that incorporates the categories and amounts of exempt property specified in the law of the applicable state if the state chooses to opt out. The incorporation was never intended to go further. The specification of the individual debtor who may take advantage of those categories and amounts is an issue of federal law, and has been set forth by Congress in § 522(b)(3)(A). Any restrictive provision included in state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" is invalid under the Supremacy Clause, even if that was not its purpose.

*The Peripatetic Debtor*, *supra* at 420 (citations omitted). *See also Urban*, 375 B.R. at 891 ("The Trustee's claim that § 522(b)(3) impermissibly permits one state to exercise sovereignty over another confuses one state's attempt to impose its rules upon another with Congress's determination to use state law as the law to be applied to a particular party or transaction.").

### d.  Supreme Court Precedent Supports the Court's Conclusion

Furthermore, although the federal appellate courts have not directly addressed this precise preemption question, the Court's holding is supported by Supreme Court precedent.

In *Owen*, the Supreme Court confronted the question of whether state exemption law can restrict a debtor's lien avoidance power pursuant to § 522(f)(1). *Owen*, 500 U.S. at 312-13. The case involved a Florida debtor who sought to avoid the lien a judgment creditor had recorded against his Florida real estate, which subsequently became his homestead. *Id.* at 307. Under the Florida Constitution, homestead property is generally immune from judgment liens. *Id.* (citing Fla. Const., Art. 10, § 4(a)). However, Florida's protection of the homestead does not apply to "pre-existing liens, *i.e.*, liens that attached before the property acquired its homestead status." *Id.* (internal citations omitted). Since the judgment creditor recorded her judgment lien before the real property at issue became the debtor's homestead, the debtor's homestead was not protected from the judgment creditor's lien under Florida law. *Id.*

26 / 33

After receiving a chapter 7 discharge, the debtor reopened his case seeking to avoid his judgment creditor's pre-existing lien pursuant to § 522(f)(1). *Id.* When *Owen* was decided, § 522(f)(1) provided that "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption *to which the debtor would have been entitled* under subsection (b) of this section, if such lien is . . . a judicial lien . . . ." *Id.* at 309 (quoting 11 U.S.C. § 522(f)(1)) (emphasis added). At the heart of the dispute was the fact that since Florida is an opt-out state, the only applicable exemptions under § 522(b) were the Florida exemptions. *Id.* If Florida had not opted-out, then subsection (b) would have permitted the debtor to claim the federal exemptions. *Id.*

The question presented to the Supreme Court was whether the judgment creditor's lien "impair[ed] an exemption to which [the debtor] would have been entitled under subsection (b)." *Id.* The judgment creditor argued that the lien did not impair an exemption to which the debtor would have been entitled under Florida law. *Id.* The judgment creditor's theory was based on the fact that the debtor's homestead was not immune from the creditor's pre-existing judgment lien under Florida law. *Id.* Essentially, the judgment creditor argued that "when Florida exemptions are used in a bankruptcy case by virtue of the opt-out provision, they must be used subject to all limitations imposed by Florida law." *The Peripatetic Debtor*, *supra* at 421. Thus, according to the judgment creditor, "the exemption the debtor would enjoy under Florida law was not impaired by the preexisting judgment lien, and § 522(f)(1) should not be available to avoid it." *Id.* After noting that "[a]t first blush," the judgment creditor's theory "seem[ed] entirely reasonable," the Supreme Court rejected the judgment creditor's theory. *Owen*. 500 U.S. at 310, 313.

The Court first explained that the lower courts have a "unanimously agreed-upon manner of applying § 522(f) to *federal* exemptions." *Id.* at 312 (emphasis added).

> To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself.
>
> As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)-which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality

*Id.* at 310-11 (emphasis original).  The Court then considered whether a different interpretation should be adopted when dealing with *state* exemptions. *Id.* at 313.  The judgment creditor argued that a different interpretation was warranted on the theory that "it is inconsistent with the Bankruptcy Code's 'opt-out' policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their *built-in limitations*." *Id.* (emphasis added).  The Court responded that the judgment creditor's theory was "plainly not true" and ultimately concluded that the § 522(f) applied to the state exemptions in the same manner that it applied to the federal exemptions. *Id.*

*Owen* is applicable in this case because it demonstrates that when Congress incorporates state law by reference in the Bankruptcy Code, federal law is not necessarily beholden to all of the relevant provisions of the incorporated state law.  *Owen's* statement that "[w]e have no basis for pronouncing the opt-out provision absolute, but must apply it along with whatever other competing or limiting policies the statute contains" is particularly relevant here. *Id.*  Thus, despite Florida's opt-out of the federal exemptions, the debtor was still entitled to avoid the judgment lien under federal law.  Similarly, in this case, North Carolina has opted-out of the federal exemptions and built-in additional limits (i.e. residency requirement) on a debtor's ability

to claim the exemptions.  The Bankruptcy Code explicitly permits North Carolina's opt-out. But, as in *Owen*, state built-in exemption limitations cannot stand when they conflict with competing federal policy.  Accordingly, since N.C.G.S. § 1C-1601(a)'s residency requirement infringes on the Congressional policy of placing the Debtors in the situation they would have been in had they not moved from North Carolina to Texas, this Court may disregard North Carolina's residency restriction.[22]

The Court also notes an analogy stated in *Camp* which was derived from *Owen's* recognition that the Bankruptcy Code may require courts to disregard some elements of reality. *Camp*, 396 B.R. at 199.  *Owen* stated that § 522(f)(1) "denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some elements of reality." *Id.* (citing *Owen*, 500 U.S. at 311).  *Camp* found that § 522(b)(3)(A), like § 522(f)(1), requires courts to disregard some elements of reality: "In *Owen,* the 'element of reality' that was to be disregarded was the fixing of the lien under Florida law; in this case, under § 522(b)(3)(A), the element of reality that must be disregarded is the fact that the debtor no longer is a domiciliary (or resident) of the state whose exemption law is to be applied to his property." *Id.* at 200.

Accordingly, *Owen* provides additional support for the Court's conclusion that the Debtors are entitled to claim North Carolina's exemptions, despite North Carolina's residency restriction.

### 2.  Section 522(b)(3)(B)

The Court must next consider whether the Debtors may claim $268,618.00 from their Texas residence as exempt under § 522(b)(3)(B).  Section 522(b)(3)(B) provides that a debtor

---

[22] *See also Camp*, 396 B.R. at 200; *The Peripatetic Debtor*, *supra* at 421-22 ("The designation of the state whose exemptions are to apply to the recently departed debtor in § 522(b)(3) . . . represents a considered policy judgment of Congress.  As was true in *Owen*, the opt-out provision can be given effect by using the substantive exemptions provided under state law, even while refusing to apply the state-created limitations on applicability of those exemptions because those limitations conflict with federal bankruptcy policy.").

may exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law . . . ." 11 U.S.C. § 522(b)(3)(B).   The Debtors first argue that their $268,618.00 claimed exemption is exempt under North Carolina tenancy by the entireties law. The Debtors also argue, in the alternative, that the exemption is permitted under Texas law.

Accordingly, the Court must first determine the "applicable nonbankruptcy law" for the purposes of § 522(b)(3)(B).  After having done, the Court must next ask whether the Debtors are eligible to exempt $268,618.00 under the applicable nonbankruptcy law.

### a.   Section 522(b)(3)(B) & North Carolina Law

The Debtors claim that since North Carolina exemptions are applicable under § 522(b)(3)(A), North Carolina law also applies to exempt property under § 522(b)(3)(B).  The Court cannot reconcile the Debtors' theory with the plain text of § 522(b)(3)(B). *See Shell Oil*, 519 U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.").  Therefore, the Court rejects the Debtors' claim that North Carolina law is the applicable nonbankruptcy law under § 522(b)(3)(B).

Unlike the 730 and 180 day requirements found in § 522(b)(3)(A), there is no mechanical formula for determining the applicable nonbankruptcy law under § 522(b)(3)(B).  Similarly, nothing in § 522(b)(3)(B) states that courts should look to § 522(b)(3)(A) when determining the applicable state law.  The Court finds that Congress's decision not to include § 522(b)(3)(A)'s formulaic requirements in § 522(b)(3)(B)—the provision directly below § 522(b)(3)(A)—was not accidental. *See Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations omitted).  Thus, the Court will not graft the requirements of § 522(b)(3)(A) onto § 522(b)(3)(B).

Instead, the Court holds that the applicable nonbankruptcy law is determined by "the situs of the asset that is held by the debtor in bankruptcy as a tenant by the entireties . . . ." *In re Cochrane*, 178 B.R. 1011, (Bankr. D. Minn. 1995). *See also In re McNeilly*, 249 B.R. 576, 581 (1st Cir. BAP 2000) (holding that Rhode Island law governed a Vermont debtor's tenancy by the entirety exemption rights because the tenancy by the entirety property at issue was located in Rhode Island); *In re Hayden*, 41 B.R. 21, 23 (Bankr. E.D. Ky. 1983) ("The Court is under the opinion that the controlling applicable nonbankruptcy law is the law of the situs of the property.") (citing *Spindle v. Shreve*, 111 U.S. 542, 4 S. Ct. 522, 28 L. Ed. 512 (1884)).  The Debtors' real property at issue is located in Texas, not North Carolina.  Therefore, the Court finds that Texas law governs the Debtors' exemption eligibility under § 522(b)(3)(B).

### b.  Section 522(b)(3)(B) & Texas law

The Debtors' argue, in the alternative, that their $268,618.00 claimed exemption pursuant to § 522(b)(3)(B) is permissible under Texas law.  In essence, the Debtors claim that Texas recognizes property interests held in a joint tenancy by the entirety.

The Debtors misunderstand Texas law.  "Texas does not recognize tenancies by the entirety." *In re Eisner*, 2007 WL 2479654, at *5 (Bankr. E.D. Tex. Aug. 28, 2007) (citations omitted); *See also In re Sumpter*, 241 B.R. 640, 644 (Bankr. W.D. Mo. 1999).  "Rather, under Texas law, there is a presumption that any property acquired by a husband and wife is held as community property." *Id.*; *see also In re Sumpter*, 241 B.R. 640, 644 (Bankr. W.D. Mo. 1999) ("All property possessed by either spouse during a marriage is presumed to be community

property unless the property is separate property acquired by one spouse by gift, devise, or descent.") (citations omitted).

Debtors' argument that Texas recognizes tenancies by the entireties is fundamentally incorrect.  Accordingly, the Court sustains the trustee's objection to the Debtors' $268,618.00 claimed exemption pursuant to § 522(b)(3)(B).

### Conclusion

Under North Carolina law, an individual debtor may exempt $35,000.00 of the value of the debtor's residence. N.C.G.S. § 1C-1601(a)(1).   In cases involving joint debtors, each individual debtor may claim the $35,000.00 homestead exemption. *See Hollar v. U.S.*, 188 B.R. 539, 541 (M.D.N.C. 1995) (stating that the joint debtors were each entitled to claim the $10,000.00 real property exemption).   Therefore, in the case the Debtors are entitled to a $70,000.00 real property exemption.

Further, the trustee did not object to the numerical value of the exemptions claimed by the Debtors.  Instead, the trustee only objected to the Debtors' ability to exempt any property under North Carolina law.  The deadline for objection to the value of the Debtors' exemption has passed.  Thus, the remainder of the Debtors' claimed exemptions are allowed. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44, 112 S. Ct. 1644, 118 L. Ed. 2d 280 (1992).

Accordingly, for the reasons set forth above, the Court holds:

1.  The Debtors are eligible for North Carolina's exemptions under § 522(b)(3)(A);

2.  North Carolina law is not the applicable state law for the purpose of § 522(b)(3)(B);

3.  The Debtors may not exempt any property under § 522(b)(3)(B) and Texas law;

4.  The Debtors claimed real property exemption is allowed but reduced to $70,000.00; and

5.  The balance of the Debtors' claimed exemptions are allowed.

A separate order was issued on March 31, 2010 (Doc. No. 29) and is unchanged by this opinion.

SIGNED **August 18, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE